STATE of Utah, Plaintiff and Appellee,

v.

Frank A. VIGIL, Defendant and Appellant.

No. 910485–CA.

Court of Appeals of Utah.

Oct. 7, 1992.

Rehearing Denied Nov. 3, 1992.

Glen T. Cella, Clearfield, and Samuel King, Harold J. Dent, Jr., Salt Lake City, for defendant and appellant.

R. Paul Van Dam, State Atty. Gen., J. Kevin Murphy (argued), Asst. Atty. Gen., Salt Lake City, for plaintiff and appellee.

Before BILLINGS, GREENWOOD and JACKSON, JJ.

GREENWOOD, Judge:

Defendant Frank A. Vigil appeals his jury conviction of two counts of dealing in material harmful to a minor, a third degree felony, in violation of Utah Code Annotated section 76-10-1206 (1990), and one count of unlawful sale or supply of alcoholic beverages to minors, a class A misdemeanor, in violation of Utah Code Annotated section 32A-12-203 (1990). We affirm.

## BACKGROUND

On the evening of August 31, 1990, a group of four thirteen- and fourteen-year-old girls saw defendant and his twelve-year-old daughter at a convenience store in Layton, Utah. Defendant's daughter was a friend of the girls, and she began talking with them. Three of the girls testified at trial that while they were talking to his daughter, defendant asked them what kind of beer they wanted and then went into the store and bought a twelve-pack of that brand of beer. Three girls also testified that defendant invited them to his house for an all night party.

The girls went to defendant's house where they drank beer, smoked and told jokes. One girl testified that defendant offered beer to the girls. Two testified that defendant did not object when some of the girls helped themselves to beer in his presence. Two other teenaged girls and defendant's thirteen-year-old son later joined the party. Two of the girls, Aimee and Shannon, watched movies, which the parties stipulated were pornographic, with defendant in his bedroom. All of the girls slept over at defendant's house.

Two of the girls, Shannon and Shiloy, also spent the next night away from their homes. The next morning Shiloy's father

contacted the police and filed a missing person's report because he feared she had run away. When Shiloy came home, she and Shannon told him of the events as described above, and also stated that defendant had made sexual advances towards Shiloy. Shiloy's father took the girls to the police station. After obtaining statements from Shannon and Shiloy, and following further investigation, the police arrested defendant and charged him with two counts of dealing in material harmful to a minor, two counts of tampering with a witness, two counts of gross lewdness, and one count of unlawful sale or supply of alcohol to minors. The State filed an amended information at the preliminary hearing, dropping the two gross lewdness charges.[1] Defendant was tried by a jury on the remaining counts.

Defendant testified at trial that he saw the girls at the convenience store and that he bought beer there, but that he took the beer to a dinner party he attended that night. He stated that he did not ask the girls what type of beer they wanted or buy it for them. He claimed that he did not invite them to his house or give his daughter permission to invite them over. He testified that he was not home that evening, but was at a friend's house having dinner from 5:00 to 11:00 p.m. He knew the girls were there when he returned, but he was too drunk to realize what they were doing. He stated that he immediately went to bed and fell asleep. He claims that the girls drank beer that was already in his refrigerator and watched the movies without his permission. Defendant's story was corroborated by the testimony of his daughter, his son, one of the girls who was present, as well as his friend and his friend's wife with whom he claimed he had dinner that night.

In the course of defense counsel's pretrial investigation, he met with three of the girls in his office and discussed the incident. He also obtained the signatures of five of them on a written statement, which stated that defendant had not given them permission to drink beer and watch the movies and that they had implicated defendant to avoid getting in trouble themselves. These written statements recanted the girls' initial report to the police as well as their testimonies at the preliminary hearing. Shannon signed the statement, but Aimee did not. Before testifying at trial, all of the girls were granted immunity from possible prosecution for perjury and giving false information to police officers.

Defendant was initially represented by attorney Robert Phillips. Phillips served as defense counsel at the preliminary hearing, but then withdrew from the case. In March 1991, defendant retained attorney Samuel King. King represented defendant at his arraignment in district court and throughout his trial and sentencing.

The jury found defendant guilty of two counts of dealing in material harmful to a minor and one count of unlawful sale or supply of alcohol to minors. The jury acquitted defendant of two counts of tampering with a witness.

Following trial but before sentencing, defendant took a polygraph examination which indicated that he had not given permission for the girls to drink beer or watch the movies. He asked the court to consider the test results in determining his sentence. The court refused to consider the results and sentenced defendant to two terms of zero to five years in the Utah State Prison to run concurrently and one year in the Davis County Jail also to be served concurrently. Additionally, defendant was fined $12,650. The trial court denied defendant's post-trial motions to dismiss the charges, for a new trial, and to set aside the verdict. This appeal followed.

After submission of briefs and oral argument, King and attorney Harold Dent entered their appearance as substitute counsel for defendant. This court then allowed supplemental briefing in order to facilitate fair and complete examination of alleged errors in the trial proceedings.

---

**1.** There was testimony that Shiloy fabricated the sexual advances because she was afraid of getting in trouble with her father for staying out two nights in a row.

## ISSUES

Defendant, in his initial brief, argues on appeal that (1) he was denied effective assistance of counsel at trial; (2) there was insufficient evidence to support his conviction; and (3) the trial court erred in failing to consider the polygraph examination results in determining his sentence. In supplemental briefing, defendant also claims (1) prosecutorial misconduct; (2) error in limiting closing arguments to twenty minutes; and (3) error in limiting voir dire questioning of jurors.

## INEFFECTIVE ASSISTANCE OF COUNSEL

■ While ordinarily a claim of ineffective assistance of counsel must be addressed by collateral attack through habeas corpus proceedings, in limited circumstances, the claim may be raised on direct appeal. *State v. Humphries*, 818 P.2d 1027, 1029 (Utah 1991); *State v. Johnson*, 823 P.2d 484, 487 (Utah App.1991). Those circumstances exist when there is new counsel on appeal[2] and there is an adequate trial record. *Johnson*, 823 P.2d at 487.

An ineffective assistance of counsel claim is usually a mixed question of law and fact. *State v. Templin*, 805 P.2d 182, 186 (Utah 1990) (citing *Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984)). Where, however, we do not have findings of fact, "the record ... allows us to determine on appeal, as a matter of law, whether defense counsel's performance constituted ineffective counsel." *Johnson*, 823 P.2d at 487.

In order to prevail, defendant must meet the two-part test established by the United States Supreme Court in *Strickland*, and adopted by the Utah Supreme Court in *Templin*. Defendant must show that (1) trial counsel's performance was deficient; and (2) defendant was prejudiced by the deficient performance. *Strickland*, 466

U.S. at 687, 104 S.Ct. at 2064; *Templin*, 805 P.2d at 186. In establishing that counsel's performance was deficient, defendant must point to specific instances in the record where the " 'representation fell below an objective standard of reasonableness.' " *Templin*, 805 P.2d at 186 (quoting *Strickland*, 466 U.S. at 688, 690, 104 S.Ct. at 2064, 2066). This court must, however, " 'indulge in the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *Id.* (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065). In proving he was prejudiced by counsel's performance, defendant " 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Templin, Id.* at 187 (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068).

We need not determine, however, whether counsel's performance was deficient, if defendant fails to satisfy the burden of showing unfair prejudice as a result of the alleged deficiencies. *State v. Frame*, 723 P.2d 401, 405 (Utah 1986); *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069–70.

Defendant argues he was denied effective assistance of counsel because his trial counsel, Samuel King, failed to adequately investigate and prepare the case. Specifically, defendant alleges that his counsel's failure to make a motion for discovery and his failure to review the preliminary hearing transcript[3] fall below the objective standard of reasonableness.

■ Although lack of preparation and investigation of a case constitutes ineffective assistance where defendant can prove he was thereby prejudiced, *Templin*, 805 P.2d at 188, failure to make a motion for discovery does not constitute per se ineffective assistance. The record in this case shows that King investigated the case through methods other than by a formal discovery motion. He had served as de-

2. Since this issue was raised in original briefing by counsel other than trial counsel, we may address it. We note also, that trial counsel, now substitute appellate counsel, argues much the same, but couches the claim primarily as being a result of prosecutorial misconduct. *See infra.*

3. King did not represent defendant at the preliminary hearing.

fense counsel for two months before trial began and he had met with defendant several times. He represented defendant at defendant's district court arraignment. King clearly knew about available evidence and inconsistencies in the girls' stories. He met with at least two of the girls and defendant's son and daughter. One or more of the girls told King the story the girls had told police. Shannon also told him that the story they told police was not true, and she told him what she claimed was the true version of the incident. King explained the consequences of perjury and gave them a copy of the perjury statute. He also wrote the recantation statement the girls signed, stating that defendant had not given them permission to drink beer or watch the movies. King received a copy of the police report before trial and therefore could use inconsistencies in what the girls told him and in what they told police in cross-examining witnesses. Defendant does not point to any witnesses or facts King would have and should have discovered through a motion for discovery of which he was not aware at trial.

King did not order nor read the preliminary hearing transcript prior to trial. At trial, King conducted extensive cross examination of the girls, brought up inconsistencies in their stories and repeatedly pointed out to the jury the fact that five of them had signed the statement which contradicts the police reports and their testimony at the preliminary hearing, as well as portions of their trial testimony.

Defendant's supplemental brief includes a description of witnesses' versions of events as related to the police, testified to in the preliminary hearing, and testified to in the trial. However, the testimony of Aimee never varied on the critical factors of defendant's guilt—his allowing minors to consume beer in his presence and turning on the video in the presence of Aimee and Shannon. Additionally, Aimee never signed the recantation statement prepared by King. Aimee's testimony in the preliminary hearing and at trial were consistent in those regards. In addition, Shannon testified at both proceedings that defendant showed the films to her and Aimee. She testified at the preliminary hearing that defendant was home during the early evening and offered beer to the girls. At trial, however, Shannon testified that defendant was not present until the late evening and did not offer beer to anyone. Her preliminary hearing testimony, therefore, was more adverse to defendant than was her trial testimony. Shannon signed the recantation statement, but testified at trial that defendant's behavior was "not that bad" and not really a big deal because she had consumed beer and watched similar movies before, and regretted having caused trouble for defendant, whom she liked.

After reviewing both the preliminary hearing and trial transcripts, we are not convinced that defendant was prejudiced by his trial counsel's failure to obtain and utilize the transcript at trial. Testimony at the preliminary hearing and at trial was consistent in regard to critical aspects of defendant's guilt or innocence, and counsel vigorously cross-examined the adverse witnesses to raise doubts about their credibility. In our view, the preliminary hearing transcript does not contain material which, if used for cross-examination purposes, would have produced a different result.

Because King adequately investigated the case and because defendant fails to demonstrate that he suffered any prejudice, we conclude that King's failure to make a motion for discovery and failure to obtain and review the preliminary hearing transcript does not constitute ineffective assistance of counsel.

## INSUFFICIENT EVIDENCE

■ In determining whether the evidence is sufficient to support a jury verdict, this court must

> review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict of the jury. We reverse a jury conviction for insufficient evidence only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defen-

dant committed the crime of which he was convicted.

*State v. Petree,* 659 P.2d 443, 444 (Utah 1983).

Defendant has the burden of marshaling all the evidence that supports the verdict, and then showing that, when viewed in the light most favorable to the verdict, the evidence is insufficient. *State v. Gardner,* 789 P.2d 273, 285 (Utah 1989) *cert. denied,* 494 U.S. 1090, 110 S.Ct. 1837, 108 L.Ed.2d 965 (1990); *State v. Moore,* 802 P.2d 732, 738–39 (Utah App.1990).

Defendant claims the evidence is insufficient to support the verdict against him on all counts and all charges. Defendant was convicted of two counts of dealing in material harmful to a minor[4] and one count of supplying alcohol to minors.[5] Defendant specifically claims that the intent element required for dealing in material harmful to a minor is not supported by credible evidence. He also argues that two elements required for a conviction of supplying alcohol to minors—(1) that he supplied alcohol, and (2) that he did so knowingly or intentionally—are not supported by credible evidence. Defendant argues that the girls' testimonies are not credible because all but one signed a statement recanting what they told police and testified to at the preliminary hearing. He also argues that the girls' testimonies are not credible because the girls were granted immunity before testifying.

Seven girls, including defendant's daughter, testified at trial. Five of them signed a recantation statement. All were granted immunity from prosecution for perjury and giving false information to a police officer before they testified. Defendant's son also testified at trial and was granted immunity.

The testimony presented at trial is contradictory and inconsistent. The undisputed evidence is that the girls saw defendant at the convenience store, that defendant bought beer at the store, that the girls went to defendant's house, that the girls drank beer at defendant's house, that two of the girls watched pornographic movies in defendant's bedroom while he was in bed, and that the girls slept over.

The trial evidence is disputed regarding whether defendant asked the girls what type of beer they wanted, whether he invited them over to his house, whether he was home that evening, whether he offered them beer, and whether he showed them pornographic movies. Five witnesses testified that defendant was not home for at least part of the evening. Three said he was home all night. One of the girls testified that defendant offered them the beer, others testified that they took the beer out of the refrigerator themselves in defendant's presence, but that .defendant did not object. Two of the girls testified that defendant asked them if they wanted to watch the movies, one testified that they watched the movies, but they asked defendant if they could, and two testified that they watched the videos without defendant's permission and that defendant was too drunk to know they were watching the movies.

It is the jury's duty to weigh the evidence and determine the credibility of each witness. *State v. Gentry,* 747 P.2d 1032, 1039 (Utah 1987). At trial, defense counsel introduced segments of statements some of the girls made to police as prior inconsistent statements. It is within the province of the jury to decide whether or not to believe witnesses in light of their prior

**4.** Dealing in material harmful to a minor, as codified in Utah Code Annotated section 76–10–1206 (1990) provides in pertinent part:

(1) A person is guilty of dealing in harmful material when, knowing that a person is a minor, or having failed to exercise reasonable care in ascertaining the proper age of a minor, he:

(a) knowingly distributes or offers to distribute, exhibits or offers to exhibit any harmful material to a minor;

(b) produces, presents, or directs any performance before a minor, harmful to minors, or participates in any performance before a minor, harmful to minors....

**5.** Supplying alcohol to minors, as codified in Utah Code Annotated section 32A–12–203 (1990) states:

(1) A person may not sell, offer to sell, or otherwise furnish or supply any alcoholic beverage or product to any person under the age of 21 years.

inconsistent statements. *State v. Ireland,* 773 P.2d 1375, 1379 (Utah 1989); *Gentry,* 747 P.2d at 1039. Defense counsel repeatedly referred to the fact that the girls had signed the recantation statement and that they had been granted immunity to testify. Because they were granted immunity, they were free to tell the truth regardless of what they had previously said at any time.

After an extensive review of the trial transcripts and other evidence presented at trial, we conclude that although the evidence is contradictory, it is sufficient to sustain the jury's verdict. The evidence is not so inconclusive or improbable that reasonable minds could not reach the result the jury reached. Defendant's convictions are therefore not reversible on this basis.

## POLYGRAPH EXAMINATION RESULTS

Following his conviction but before sentencing, defendant took a polygraph test, the results of which indicated he did not give the girls permission to drink beer or watch pornographic movies. Defendant asked the trial court to consider these results in determining his sentence. The court refused to do so and defendant now claims that was error.

■ Utah Rule of Criminal Procedure 22(a) states:

Before imposing sentence the court shall afford the defendant an opportunity to make a statement in his own behalf and to present any information in mitigation of punishment, or to show any legal cause why sentence should not be imposed. The prosecuting attorney shall also be given an opportunity to present any information material to the imposition of sentence.

At the sentencing phase, the trial court " 'must be permitted to consider any and all information that reasonably may bear on the proper sentence for the particular defendant, given the crime committed.' " *State v. Sanwick,* 713 P.2d 707, 708 (Utah 1986) (quoting *Wasman v. United States,* 468 U.S. 559, 563, 104 S.Ct. 3217, 3220, 82 L.Ed.2d 424 (1984)). The information may come from outside the record, *id.,* and evidence that is inadmissible at the guilt phase may be admissible at the sentencing phase. *State v. Howell,* 707 P.2d 115, 117 (Utah 1985). It is within the trial court's discretion to determine what aggravating or mitigating factors to consider.

■ In *State v. Tillman,* 750 P.2d 546 (Utah 1987), the defendant was convicted of capital murder and argued the trial court erred in excluding polygraph evidence during the penalty phase. The court found no error in excluding the test results because they added nothing that had not been presented and decided at trial. *Id.* at 557–59.

Here, defendant offered the results because he claims they are pertinent to the ultimate question of his guilt. However, "it is the jury's duty to determine the innocence or guilt of the accused." *State v. Cude,* 784 P.2d 1197, 1202 (Utah 1989). The issue of defendant's guilt was already fully presented to, considered and decided by the jury.

Defendant also fails to show how he was prejudiced by the trial court's refusal to consider the polygraph results. The court did consider other mitigating factors such as defendant's family situation, that his children lived with him, that he had sought treatment for his alcohol problem and had not had a drink in "a couple of weeks." At sentencing, the trial court stated, "[e]ven if I had [the lie detector test results], I would not for that reason set aside a verdict of eight jurors when they heard the testimony."

We conclude the trial court did not abuse its discretion in refusing to consider the results of the polygraph examination because the issue of defendant's guilt was already presented to and decided by the jury. *See Tillman,* 750 P.2d at 559.

## PROSECUTORIAL MISCONDUCT

Defendant claims in his supplemental brief that the State committed prosecutorial misconduct by failing to immediately notify King that the case would actually go to trial, as the trial court had instructed. At the pretrial hearing, approximately ten

days prior to the trial date, a possible dismissal of the case was discussed by counsel and the trial court. The court requested that counsel for the State inform defendant and the court of its intended action. However, it was not until the Friday afternoon prior to the Wednesday trial date that the State indicated the trial would go forward.

■ Since the trial court ruled on this issue at the post-conviction motions hearing, this court reviews this issue for an abuse of discretion. *State v. Boone*, 820 P.2d 930, 932 (Utah App.1991).

■ In order to prevail on a prosecutorial misconduct claim, defendant must show (1) misconduct by the prosecutor, and (2) resulting prejudice to defendant. *See State v. Span*, 819 P.2d 329, 333–36 (Utah 1991).

No Utah cases directly address a prosecutor's failure to inform defense counsel that a matter was indeed going to trial. The two cases which are most closely analogous are *State v. Span* and *State v. Knight*, 734 P.2d 913 (Utah 1987). *Span* involved a prosecutor who introduced evidence on cross-examination which the trial court had previously ruled excluded. In finding this to be a clear act of misconduct, the supreme court stated, "a state's attorney may not deliberately choose to ignore a trial court's ruling." *Span*, 819 P.2d at 335. In *Knight*, the prosecutor withheld information demanded in defense counsel's discovery requests. There, the court determined that such misconduct was sufficient under the two-part test to constitute reversible error. It found that had defense counsel received the information requested, there was a "reasonable likelihood of a more favorable result for defendant." *Knight*, 734 P.2d at 923.

■ Prejudice claimed by defendant in this case is lack of time to adequately prepare for trial, specifically insufficient time to order and review the transcript of the preliminary hearing. Our disposition of the ineffective assistance of counsel issue is fairly well dispositive on the claim of prejudice from the State's failure to timely notify defendant that the trial would pro-

ceed as scheduled. Moreover, we agree with the trial court that the State's conduct, though not exemplary, fails to constitute prosecutorial misconduct. In ruling on defendant's post trial motions, the trial court expressed its disapproval of the State's inaction, but stopped short of granting defendant's motion for a new trial. The court explained its understanding of the instructions it gave the State at the pretrial conference:

If by Tuesday evening you know the answer to the question, you ought to let defense counsel know. If you know by Wednesday, you ought to let them know. Not wait until Friday noon or Friday afternoon. I honestly think that was an expectation on the part of the Court that the County attorney's office would notify the defendant no later than Friday as to whether they were going to go to trial on it or whether they were seriously going to consider a dismissal.

Now I recognize that you can read it differently. But I think taking it all into consideration, that was the expectation of that the Court had, and certainly that was the expectation that the defense counsel had.

Furthermore, at the pre-trial conference, the trial court had denied defendant's motion for a trial continuance, so that defendant had no justification for delaying trial preparation. Counsel had several weeks to prepare for trial before the pretrial, as well as four days after he found out for a certainty that the case would be tried. As a result, we find no prejudicial prosecutorial misconduct.

## REMAINING ISSUES

Defendant also raises issues concerning limitations on closing arguments, voir dire questioning, and the State's failure to abide by its alleged agreement to admit polygraph results during the sentencing phase. We have considered those issues, find them to be without merit, and therefore decline to address them in full in this opinion. *See State v. Carter*, 776 P.2d 886, 888–89 (Utah 1989).

## CONCLUSION

We conclude that defendant was not denied effective assistance of counsel, that the evidence was sufficient to convict him of both crimes, that there was no prejudicial prosecutorial misconduct, and that the trial court did not err in refusing to consider the polygraph examination results in determining defendant's sentence. Defendant's convictions are therefore affirmed.

BILLINGS and JACKSON, JJ., concur.