STATE of Utah, Plaintiff and Appellee,

v.

Gary Wayne SPAINHOWER, Defendant and Appellant.

No. 971726–CA.

Court of Appeals of Utah.

Oct. 7, 1999.

D. Bruce Oliver, Salt Lake City, for Appellant.

Jan Graham, Attorney General, Kris C. Leonard, and Catherine M. Johnson, Assistant Attorneys General, Salt Lake City, for Appellee.

Before GREENWOOD, Associate P.J., and JACKSON, and ORME, JJ.

OPINION

ORME, Judge:

¶ 1 Appellant, Gary Wayne Spainhower, appeals his conviction for retaliation against a witness, in violation of Utah Code Ann. § 76–8–508(2)(c) (1995), arguing the evidence presented by the State was insufficient to make a prima facie showing that he "communicate[d] to a person a threat that a reasonable person would believe to be a threat to do bodily injury to the person." *Id.* We con-

clude the State's evidence was sufficient to establish a prima facie case and affirm.

## BACKGROUND

¶ 2 Appellant was convicted of retail theft on March 25, 1996. The trial court ordered him to serve twelve months probation, during which he was not to "follow, intimidate, nor harass" the witnesses who testified at his trial. Eleven months later, on February 28, 1997, appellant encountered one of the witnesses while she was grocery shopping. Appellant passed by the witness a number of times, staring at her, making eye contact, and grinning. Eventually, appellant said, as he passed, "You're pitiful." Shortly thereafter, he passed by her again and said, "I'm going to get you for lying in court, you fat bitch."[1] The witness then abandoned her grocery cart and left the store. Appellant followed her out of the store, climbed into his own car, and followed her car for a short distance after she pulled out of the parking lot.

¶ 3 Thereafter appellant was charged by information with retaliation against a witness, a third degree felony, in violation of Utah Code Ann. § 76–8–508(2)(c) (1995). He was ultimately convicted by a jury and sentenced to a prison term of zero to five years.

## ISSUE AND STANDARDS OF REVIEW

¶ 4 Appellant urges us to reverse his conviction, arguing the trial court erred when it denied his motion to dismiss at the close of the State's case-in-chief. Appellant asserts it was error for the court to submit the case to the jury because the State presented insufficient evidence of a "threat to do bodily injury," Utah Code Ann. § 76–8–508(2)(c) (1995), an element of the crime, during its case-in-chief. *See State v. Taylor,* 818 P.2d 561, 573–74 (Utah Ct.App.1991). The denial of a motion to dismiss for failure to establish a prima facie case is a question of law we review for correctness. *See Grossen v. DeWitt,* 982 P.2d 581, 369 Utah Adv. Rep. 31, 33 (Utah Ct.App.1999). The interpretation of a statute is likewise a question of law we review for correctness. *See State v. Fixel,* 945 P.2d 149, 151 (Utah Ct.App.1997).

## ANALYSIS

¶ 5 Utah Code Ann. § 76–8–508(2)(c) (1995) states, with our emphasis:

> A person is guilty of a third degree felony if he ... communicates to a person *a threat that a reasonable person would believe to be a threat to do bodily injury* to the person, because of any act performed or to be performed by the person in his capacity as a witness or informant in an official proceeding or investigation.

"Bodily injury" is defined as "physical pain, illness, or any impairment of physical condition." *Id.* § 76–1–601(3) (Supp.1999). Appellant argues that the witness's testimony that appellant said "I'm going to get you for lying in court, you fat bitch,"[2] was not sufficient evidence of a threat to do bodily injury and did not justify submitting the case to the jury. We disagree.

A defendant's motion to dismiss for insufficient evidence at the conclusion of the State's case in chief requires the trial court to determine whether the defendant must

---

1. Appellant disputes that he said any such thing. But, as always, when reviewing the denial of a motion to dismiss, "we consider the facts and all the inferences to be drawn therefrom in a light most favorable to the nonmoving party," in this case, the State. *O'Neal v. Division of Family Servs.,* 821 P.2d 1139, 1140 (Utah 1991).

2. The witness testified at trial that this is what appellant said to her in the grocery store. At an earlier probation violation hearing, she testified that appellant's statement was simply, "I'm going to get you." Appellant makes much of this discrepancy, apparently asserting that the evidence was insufficient to convict him because the witness either "lied" or her testimony was "the product of suggestion." Appellant's argument is unavailing. His counsel questioned the witness about her inconsistent statement on cross-examination in an effort to impeach her credibility. "It [was then] within the province of the jury to decide whether or not to believe [her testimony] in light of [her] prior inconsistent statements." *State v. Vigil,* 840 P.2d 788, 793–94 (Utah Ct.App. 1992), *cert. denied,* 857 P.2d 948 (Utah 1993). In any event, as hereafter explained, we consider "I'm going to get you" to be the legally significant statement. Because both the simpler and the more elaborate version of the statement contained those words, either version was sufficient to establish a prima facie showing of a threat to do bodily harm.

proceed with the introduction of evidence in his defense. In order to submit a question to the jury, it is necessary that the prosecution present some evidence of every element needed to make out a cause of action.

*State v. Noren,* 704 P.2d 568, 570 (Utah 1985) (per curiam) (citations omitted). If the evidence presented by the State is, as a matter of law, insufficient to establish the elements of the offense, the trial court may dismiss the charge. *See State v. Gardner,* 789 P.2d 273, 284 (Utah 1989), *cert. denied,* 494 U.S. 1090, 110 S.Ct. 1837, 108 L.Ed.2d 965 (1990). Evidence is sufficient, and the denial of a motion to dismiss proper, if "the evidence and all inferences that can be reasonably drawn from it [establish that] some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." *State v. Dibello,* 780 P.2d 1221, 1225 (Utah 1989). Here, appellant's challenge to the trial court's denial of his motion to dismiss requires us to determine whether the State presented sufficient evidence from which the jury, " 'acting fairly and reasonably,' " could determine beyond a reasonable doubt that a threat to do bodily injury was made. *State v. Taylor,* 884 P.2d 1293, 1296 (Utah Ct.App.1994) (quoting *State v. Iverson,* 10 Utah 2d 171, 350 P.2d 152, 153 (1960)).

¶ 6 At trial, the jury had the duty to determine whether a reasonable person would have understood appellant's statement to be a threat of bodily injury. *See* Utah Code Ann. § 76–8–508(2)(c) (1995). When making such a determination, it is appropriate for the jury to consider both the content of the statement and the context in which it was spoken. The content of appellant's statement, "I'm going to get you," surely may connote a threat of bodily injury. Among the many dictionary definitions of the verb "get" are: "to bring to retribution[,] take vengeance on[,] KILL" and "to strike with force[,] HIT." *Webster's Third New International Dictionary* 953 (1976).

¶ 7 While appellant's words lend themselves to this interpretation, we recognize that they are at the same time vague and indirect. They could conceivably carry a non-violent meaning, such as "I'm going to get you in trouble with the district attorney for lying in court." For this reason, the jury's determination whether appellant's statement was threatening depends as much on the inferences to be drawn from the context in which the words were spoken as on the words themselves. "Uttered in one context, an apparently innocent statement such as, 'I'd be careful crossing the street if I were you' can be merely helpful advice to a senior citizen. Uttered in another context it may well be correctly perceived by reasonable persons to be intended as a threat." *State v. Crescenzi,* 224 N.J.Super. 142, 539 A.2d 1250, 1253 (Ct.App.Div.), *cert. denied,* 111 N.J. 597, 546 A.2d 520 (1988).

¶ 8 The trial court properly deferred to the jury's assessment of appellant's statement. *See, e.g., State v. Hamilton,* 827 P.2d 232, 236 (Utah 1992). We were similarly willing to defer to inferences drawn by a jury in *State v. Fixel,* 945 P.2d 149 (Utah Ct.App. 1997), another case that required interpretation of objectively vague language. In that case, an individual was convicted of threatening a judge after he stated, "When I get out the judge is dead." *Id.* at 150. In affirming his conviction for threatening a judge, this court held:

> Looking at the verdict in the required favorable light, we conclude the jury could readily find that [the appellant] said, "When I get out the judge is dead," and that, in so stating, [he] was not merely registering a prediction that upon his release, by the sheerest coincidence, the judge would die of natural causes. Rather, the jury was free to infer that in making the statement, [he] was threatening to take a hand in the judge's demise, i.e., to murder the judge.

*Id.* at 152.

¶ 9 Other courts have also held that it is for the jury to evaluate allegedly threatening language and conduct, and that in doing so, a jury may consider both content and context. In *People v. Ford,* 145 Cal.App.3d 985, 193 Cal.Rptr. 684 (1983), the California Court of Appeals affirmed a jury's determination that the appellant, who had shouted obscenities at a witness and stated, " '[W]e'll get you,

you've got kids,'" had uttered a threat in an attempt to prevent the witness from offering further testimony against him. *Id.* at 685–86. The court explained that the words spoken by the appellant

> have more than a plain meaning, as do all words. These words also carry with them an inherent baggage of connotation which plainly suggests to the auditor, "You are in trouble for testifying so do not let it happen again or things will only get worse." The jury could interpret defendant's remarks to [the witness] as a warning or threat not to testify in the future.

*Id.* at 686.

¶ 10 In another case, the appellant was convicted of making terrorist threats after he stated, "'I'm going to get you,'" and "'I'll get back to you, I'll get you,'" during an altercation with his girlfriend's supervisor. *People v. Martinez,* 53 Cal.App.4th 1212, 62 Cal.Rptr.2d 303, 304–05, *review denied,* 1997 Cal. LEXIS 3942 (Cal.1997). He argued on appeal that his statements were "vague and did not specifically convey a threat of great bodily injury or death[, but were] little more than 'mouthing off' and posturing." *Id.* at 306. The court agreed that the appellant's words

> may not, standing alone, convey a threat to commit a crime which will result in death or great bodily injury. But ... the meaning of the threat by defendant must be gleaned from the words and all of the surrounding circumstances.... Defendant's words, combined with the surrounding circumstances, are susceptible to an interpretation that defendant made a grave threat to [the supervisor's] personal safety.

*Id.* at 306, 308.

¶ 11 Further demonstrating the key role of *context,* an even more vague and indirect statement was held sufficient to support a conviction for making a terrorist threat in *People v. Mendoza,* 59 Cal.App.4th 1333, 69 Cal.Rptr.2d 728 (1997). After the victim testified at a preliminary hearing against the appellant's brother, the appellant told her that, because she testified, he was "going to talk to some guys from Happy Town." *See id.* at 730. "Happy Town" was not the name of some local amusement park, but rather of the gang to which appellant and his brother belonged, and to which the victim had formerly belonged. *Id.* The court observed:

> It is true that in the abstract the words "I'm going to talk to some guys from Happy Town" could mean something as innocuous as, for example, [the victim] would no longer be invited to Happy Town parties, or because Happy Town members do not keep secrets appellant would have to tell the other gang members what she had done. However, based on appellant's and [the victim's] history and their mutual involvement in Happy Town, [the victim] knew appellant's words meant "they were going to kill me," "they were going to come back and kill me" or "shoot me" for having given damaging testimony at a fellow gang member's trial.

*Id.* at 733. The court held that "[a] rational juror could reasonably find a threat to bring a person to the attention of a criminal street gang as someone who has 'ratted' on a fellow gang member presents a serious danger of death or great bodily injury." *Id.*

■ ¶ 12 At oral argument in the instant case, appellant's counsel emphasized that the witness did not testify that she feared bodily injury during her encounter with appellant, suggesting that the evidence was insufficient because his words did not make the witness fear bodily injury. Although the witness did testify that she was "scared," "very nervous," and "intimidated," the State was not required to prove the witness herself feared bodily injury because subjective fear on the part of the victim is not an element of the crime. The plain language of the statute unequivocally requires the element of a threat to do bodily injury to be evaluated from an objective perspective. A person is guilty under the statute if he communicates "a threat that *a reasonable person* would believe to be a threat to do bodily injury." Utah Code Ann. § 76–8–508(2)(c) (1995) (emphasis added). "Under this test, the subjective courageousness or timidity of the victim is irrelevant[.]" *United States v. Higdon,* 832 F.2d 312, 315 (5th Cir.1987) (analyzing taking by intimidation under objective test), *cert. denied,* 484 U.S. 1075, 108 S.Ct. 1051, 98 L.Ed.2d 1013 (1988). Instead, as we have discussed, it is

for the jury to determine "whether a reasonable person, given the conduct of the defendant and the context in which it occurred, would experience" a threat of bodily harm. *United States v. France,* 57 F.3d 865, 866–67 (9th Cir.1995) (applying objective standard and construing "I have dynamite" as express threat of death).

¶ 13 While proof of the victim's subjective fear is not necessary, neither is it irrelevant. "Evidence that ... acts did induce fear in an individual victim *is* probative of whether [the] acts were objectively [threatening]." *Higdon,* 832 F.2d at 315. "It is the jury's unique role to evaluate the victim's temperament, to determine from her demeanor the weight to be given her testimony, and, ultimately, to decide whether the defendant's acts reasonably would induce fear in an ordinary person standing in the victim's shoes." *Id.*

¶ 14 We readily determine in this case that the State presented sufficient evidence, as a matter of law, to make a prima facie showing that appellant communicated a threat of bodily harm. Appellant's statement, "I'm going to get you," uttered after appellant had been following the witness through the grocery store, repeatedly passing near her, making eye contact, staring, and grinning was sufficient evidence from which a jury could reasonably conclude that he had threatened the witness with bodily harm. In making this determination, it was appropriate for the jury to consider both the meaning of the words themselves and the context in which they were spoken. The jury was presented with additional evidence of the witness's subjective state of mind. This testimony was probative of whether appellant's comments were objectively threatening.

## CONCLUSION

¶ 15 The trial court did not err when it denied appellant's motion to dismiss at the close of the State's case-in-chief. The evidence presented by the State was sufficient to establish a prima facie case that appellant communicated to the witness a threat of bodily injury.

¶ 16 Affirmed.[3]

¶ 17 WE CONCUR: PAMELA T. GREENWOOD, Associate Presiding Judge, and NORMAN H. JACKSON, Judge.

---

3. We have carefully considered the two other issues raised by appellant and conclude they are wholly without merit. We decline to address them further. *See State v. Carter,* 776 P.2d 886, 888 (Utah 1989) (holding that appellate court "need not analyze and address in writing each and every argument, issue, or claim raised and properly before us on appeal"). *See also id.* at

889 ("[I]t is a maxim of appellate review that the nature and extent of an opinion rendered by an appellate court is largely discretionary with that court."). *Cf. Reese v. Reese,* 376 Utah Adv. Rep. 3, 4 (Utah 1999) (to facilitate Supreme Court certiorari review, court of appeals must "at the very least identif[y] the basis for refusing to treat an issue").