matter was transferred to the Fourth District Court."

¶ 4 The issue before this court is whether the juvenile court erred in dismissing the motion for an order to show cause for lack of subject matter jurisdiction. The juvenile court did not err. The 2005 Order of Final Disposition dismissed the petition and thereby terminated juvenile court jurisdiction. The order provided a mechanism for enforcement of its provisions through an order to show cause filed by a Guardian Ad Litem in district court. If Grandparents seek to enforce the provisions of the 2005 order, they must comply with the terms of the order by either requesting the Guardian Ad Litem to file an order to show cause or, if no Guardian Ad Litem is currently representing the children, by petitioning the district court for appointment of a Guardian Ad Litem. Thus, the juvenile court's dismissal of the order to show cause was consistent with the 2005 order, which contemplated that the juvenile court case would be dismissed and enforcement of provisions of the stipulated order would be by the district court. If Grandparents seek to pursue their claim that the no contact provisions were inappropriately modified or removed by the district court because Grandparents' consent was not obtained, that claim must be presented to the district court where the modification occurred.

¶ 5 Furthermore, Grandparents' claim that the juvenile court can exercise continuing jurisdiction over the children in this case is misplaced. In addition to the fact that Grandparents' petition was dismissed by stipulation of the parties, the children were never adjudicated to be within the juvenile court's jurisdiction as neglected, abused, or dependent children. *See* Utah Code Ann. § 78A–6–103(1)(c) (Supp.2011) (providing for juvenile court jurisdiction over children who are adjudicated to be abused, neglected, or dependent). There is simply no basis for an exercise of continuing jurisdiction over these children. Accordingly, we affirm the dismissal of Grandparents' motion for an order to show cause.

2011 UT App 366

**STATE of Utah, Plaintiff and Appellee,**

v.

**Larry James STEVENS II, Defendant and Appellant.**

**No. 20091071–CA.**

Court of Appeals of Utah.

Oct. 27, 2011.

Gary G. Kuhlmann, St. George, for Appellant.

Mark L. Shurtleff and Kris C. Leonard, Salt Lake City, for Appellee.

Before Judges DAVIS, McHUGH, and ROTH.

## MEMORANDUM DECISION

ROTH, Judge:

¶1 Defendant Larry James Stevens II appeals his conviction for theft by receiving a stolen operable motor vehicle, a second degree felony, *see* Utah Code Ann. § 76–6–408(1) (Supp.2011); *id.* § 76–6–412(1)(a)(ii), challenging the trial court's denial of his motion to dismiss for insufficient evidence.[1] We affirm.

¶2 On April 30, 2009, Stevens rented a vehicle in Ely, Nevada. Stevens told the owner of the car rental company that he needed the vehicle for only two days because he was visiting a relative near town and his car had broken down. Stevens produced a driver license as well as other forms of identification and offered payment through two debit cards and a credit card. The debit cards were declined but the credit card was approved. The rental company owner did not charge the credit card at that point, having determined that it had sufficient funds for the estimated amount of the two-day rental. The credit card was not in Stevens's name, but Stevens explained that it belonged to his mother. The owner then rented Stevens a 2002 Mercedes ML500 with leather interior, a GPS navigational system, an XM satellite radio system, a six-disk CD changer, and lockboxes under the passenger seats. According to the owner, the vehicle was in "very good, clean condition." The vehicle was to be returned on May 2, 2009.

¶3 Stevens did not return the rental vehicle on May 2 as he had agreed to do, and over the next few days, a series of events occurred that were later linked to him. On May 1, a market in Cedar City, Utah, was burglarized and vandalized. Around 400 packs of cigarettes were stolen. On May 2 or May 3, in St. George, Utah, a Toyota Tacoma and an attached trailer were similarly burglarized and vandalized. More than $10,000 in property was stolen from the truck

---

1. Because the relevant statutory provisions are substantively unchanged, we cite to the current version of the code as a convenience to the reader.

and trailer, including a new Playstation 3, a laptop, a camcorder, and over 500 DVDs, as well as military paperwork and medals, all of which were stored in distinctive boxes.

¶ 4 On May 3, near Ivins, Utah, an officer responded to a report of a vehicle driving in an area where no vehicle was supposed to be. While en route to the area where the vehicle had been sighted, the officer saw a vehicle that matched the description given to him and began following it. The officer determined that the driver was speeding and turned on his lights to pull over the vehicle. Instead of stopping, the driver fled at speeds as high as 115 miles per hour and, in the process, committed several moving violations. The officer described the chase as "[o]ne big, long speeding violation." The driver—Stevens—was eventually removed from the vehicle at gunpoint and arrested. According to the officer, after being detained Stevens exhibited symptoms consistent with methamphetamine use, and drugs and drug paraphernalia were found inside the vehicle. A number of items from the burglaries in Cedar City and St. George were also found in the vehicle.

¶ 5 Back in Ely, Nevada, when the rental vehicle was not returned on May 2, the owner of the car rental company attempted to charge the credit card given to him by Stevens, but the card was declined. That same day, the owner reported the rental vehicle stolen. On May 3, the owner received a call from the officer who had detained Stevens, informing him that the rental vehicle had been recovered in Ivins, Utah, and was impounded. When the owner later recovered the vehicle, he reported that it was in "very, very, very poor condition" and "was not drivable." Among other damage, the vehicle was "absolutely filthy"—there was broken glass throughout the vehicle, "the plastic was ... destroyed all over [the] inside of the car," most of the paneling had been torn out, the seats were torn in several places, the leather interiors had cigarette burns, and the car smelled of smoke. The wires to the GPS unit were torn out and cut and its screen was cracked. Similarly, the wires to the six-disk CD changer were torn out and cut. The lockboxes had also been broken. The vehicle's exterior was scratched "all the way down the side like it had been driven up against a tree," and the bumper was cracked. Further, the cross-members on the underside of the frame had been badly damaged. Ultimately, the cost of necessary repairs was greater than the cost of the vehicle, and the insurance company totaled the vehicle.

¶ 6 Stevens was charged with, among other things, theft by receiving stolen property, an operable motor vehicle. *See* Utah Code Ann. § 76–6–408(1) (Supp.2011) (providing elements for theft by receiving stolen property); *id.* § 76–6–412(1)(a)(ii) (providing that theft by receiving stolen property is a second degree felony if the property stolen is an operable motor vehicle).[2] At the close of the State's case-in-chief, Stevens moved to dismiss the theft by receiving a stolen motor vehicle offense for insufficient evidence. The trial court denied his motion, and the jury found Stevens guilty.

¶ 7 Stevens argues that the trial court erred in denying his motion to dismiss because the State had presented insufficient evidence from which the jury could find him guilty of theft by receiving a stolen motor vehicle. *See generally State v. Spainhower,* 1999 UT App 280, ¶¶ 4–5, 988 P.2d 452 ("The denial of a motion to dismiss for failure to establish a prima facie case is a question of law we review for correctness.... Evidence is sufficient, and the denial of a motion to dismiss proper, if the evidence and all inferences that can be reasonably drawn from it [establish that] some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." (alteration in original) (citations and internal quotation marks omitted)). The basis for Stevens's insufficient evidence argument centers on the statutory elements he asserts the State was required to prove. To that extent, Stevens's argument presents an issue of statutory interpretation, which we review for correct-

---

**2.** Stevens was also charged with numerous other crimes, including drug-related offenses, offenses stemming from his attempt to evade police, and theft by receiving stolen property arising out of his possession of the items from the burglaries in Cedar City and St. George.

ness. *See generally id.* ¶ 4 ("The interpretation of a statute is likewise a question of law we review for correctness.")

¶ 8 In support of his position, Stevens relies on Utah Code section 76–6–410.5, which provides that "[a] renter [of a rental vehicle] is guilty of theft of a rental vehicle if, without notice to and permission of the rental company, the renter knowingly fails without good cause to return the vehicle within 72 hours after the time established for the return in the rental agreement." Utah Code Ann. § 76–6–410.5(2) (2008). He argues that, at the time of his arrest, the rental vehicle was less than twenty-four hours past due, and because he was incarcerated he had good cause for not returning it within the seventy-two-hour grace period provided by statute. *See id.* Thus, according to Stevens, because the State could not prove that he had retained the rental vehicle longer than seventy-two hours without good cause, it could not prove that he had the necessary intent to deprive the owner of the rental vehicle. Stevens further contends that although he had retained the vehicle for longer than he was authorized under the rental agreement, this deviation from the agreement's terms justifies no more than civil liability for breach of contract rather than criminal liability for theft. (Citing *State v. Dirker*, 610 P.2d 1275,. 1277–80 (Utah 1980) (concluding that a repairman, who had agreed to repair a car in return for being allowed to use it until the repairs were completed, was not guilty of a crime but was more appropriately liable for civil damages for harm that occurred to the vehicle when he allowed it to be used beyond the scope of the owner's consent by allowing his girlfriend to drive the car).) Stevens thus concludes that there was insufficient evidence to support his conviction.

¶ 9 Stevens was not charged with theft of a rental vehicle under section 76–6–410.5, however, but was charged with theft by receiving a stolen motor vehicle under section 76–6–408. Theft by receiving a stolen motor vehicle—or, more generally, theft by receiving stolen property—is a separately-defined crime that is committed when a person "receives, retains, or disposes of the property of another knowing that it has been stolen, or

believing that it probably has been stolen, ... intending to deprive the owner of it." Utah Code Ann. § 76–6–408(1) (Supp.2011); *see also id.* § 76–6–412(1)(a)(ii) (specifying the penalty for theft by receiving stolen property if the property stolen is an operable motor vehicle); *State v. Ramon*, 736 P.2d 1059, 1062–63 (Utah Ct.App.1987) (explaining elements of theft by receiving stolen property). The elements of theft by receiving a stolen motor vehicle do not include the seventy-two-hour grace period provided by the statute that proscribes the theft of a rental vehicle. *Compare* Utah Code Ann. § 76–6–408, *with id.* § 76–6–410.5. Just as the trial court observed in denying Stevens's motion to dismiss, the statute criminalizing theft by receiving a stolen motor vehicle "under which ... Stevens is charged is different from the theft of a rental [vehicle] statute"; the crimes are "defined differently" and do not "overlap." Stevens's reliance on the theft of a rental vehicle statute is, therefore, misplaced.

¶ 10 Further, the State has broad discretion in deciding how to prosecute each case. *See State v. Bell*, 785 P.2d 390, 402 (Utah 1989) ("The general rule is that prosecutors are given broad discretion in determining whether and in what manner to prosecute each case."), *disagreed with on other grounds by State v. Mohi*, 901 P.2d 991 (Utah 1995). Here, the State, in exercise of its discretion, chose to prosecute Stevens under the theft by receiving a stolen operable motor vehicle statute rather than the theft of a rental vehicle statute. *See generally State v. Seekford*, 638 P.2d 525, 526–27 (Utah 1981) (rejecting a criminal defendant's argument that the State improperly charged him under the general theft statute when there existed a specific statute covering thefts pursuant to rental agreements because the State need only "plead the general offense of theft and the accusation may be supported by evidence that it was committed in any manner specified"). The State was, therefore, not required to prove that Stevens had retained the rental vehicle without good cause for seventy-two hours, *see* Utah Code Ann. § 76–6–410.5(2); rather, it was required to prove that Stevens had retained the rental vehicle, knowing or believing that it had been

stolen, with the intent to deprive the owner of it, *see id.* § 76–6–408(1). In presenting his argument and focusing on the theft of a rental vehicle statute, Stevens has not recounted all the circumstances surrounding his "deviation" from the rental agreement, the facts of which support the State's decision to charge him with theft by receiving a stolen operable motor vehicle and also provide sufficient evidence for Stevens's conviction of that offense.

¶ 11 The evidence presented at trial showed that not only did Stevens retain the rental vehicle past the time specified by the rental agreement but also that the rental vehicle was extensively damaged both in the interior and on the exterior while in Stevens's possession. Indeed, the record indicates that damage done to the vehicle was one of the primary bases for the State's case against Stevens rather than his failure to return the rental vehicle on time. The trial court and the State also reasoned that the State's charge of theft by receiving a stolen motor vehicle was supported by evidence that Stevens had obtained the rental vehicle under false pretenses by using a credit card that did not belong to either him or his mother and by representing to the owner that he would be using the vehicle to visit a relative near Ely, Nevada, when he instead drove the vehicle across state lines into Southern Utah. Further, in denying Stevens's motion to dismiss, the trial court recognized that when Stevens was apprehended following the high-speed chase, he was in possession of other stolen property—specifically, the property taken in the burglaries in Cedar City and St. George over the two previous days. The trial court reasoned that Stevens's possession of property stolen on another occasion created a presumption that he had the necessary knowledge or belief mental state to commit theft by receiving a stolen motor vehicle. *See generally* Utah Code Ann. § 76–6–408(2)(a) (providing that the "knowledge or belief required for" theft by receiving a stolen operable motor vehicle "is presumed in the case of an actor who[ ] is found in possession or control of other property stolen on a separate occasion"). Given this evidence and the applicable law, the trial court concluded that there was sufficient evidence from which the jury could find that the elements of theft by receiving a stolen motor vehicle had been proven beyond a reasonable doubt and denied Stevens's motion to dismiss. *See generally State v. Spainhower,* 1999 UT App 280, ¶¶ 4–5, 988 P.2d 452. We agree and conclude that the trial court correctly denied Stevens's motion to dismiss.

¶ 12 Stevens's next argument focuses on the presumption that possession of other property stolen on a separate occasion can establish the required knowledge or belief that the property at issue has been stolen. *See* Utah Code Ann. § 76–6–408(2)(a). Stevens asserts that "the evidence used against him in other counts" concerning his possession of the stolen property from the Cedar City and St. George burglaries "was incorrectly given transitive properties to support his ... conviction" for theft by receiving a stolen motor vehicle. Stevens's argument seems to be based on the significance of a distinction he perceives between the statutory terms "receives" and "retains." Based on that distinction, Stevens appears to assert that the knowledge or belief that received property is stolen is different from the knowledge or belief that retained property is stolen and argues that *receipt* of stolen property cannot be used to prove that someone *retained* property so as to steal it. In so arguing, it appears that the basis for the distinction asserted by Stevens turns on whether the person accused of being in possession of the property is the person who "retained" the property, i.e., the one who actually stole it, or is another person who simply "received" the property. Thus, under the particular circumstances of this case, Stevens argues that his receipt or possession of the property stolen in the burglaries in Cedar City and St. George cannot be used to prove that he stole the rental vehicle by retaining it beyond the scope of the rental agreement. Rather, he argues that his "possession of stolen goods cannot create a presumption of knowledge or belief that the [rental v]ehicle was stolen, unless [he] received the [rental v]ehicle from someone other than the owner."

¶ 13 Stevens's argument, however, misconstrues the statute. The gravamen of theft by receiving stolen property in a case such as this is simply possession of the property with the required mental states, i.e., knowledge or belief that the property is stolen and the intent to deprive the owner of the property. *See id.* § 76-6-408(1); *see also Ramon,* 736 P.2d at 1062-63 (explaining the elements of theft by receiving stolen property). The statute describes several variations on how a person may possess the property, in particular by receipt or retention. *See* Utah Code Ann. § 76-6-408(1). The statute also provides that "the knowledge or belief required" can be "presumed in the case of an actor who[ ] is found in possession or control of other property stolen on a separate occasion." *Id.* § 76-6-408(2)(a). This statutory presumption therefore bases the required knowledge or belief on *possession* and is indifferent as to how the accused came to possess the property—for example, by stealing the property himself and retaining it or by receiving the stolen property from someone else.[3] As the State points out, the statutory "language is sufficiently broad to encompass not only the . . . person who obtains [or receives] the property from the thief, but the thief himself." The presumption applies whether a person is "found in possession or control of other property stolen on a separate occasion," *see id.,* regardless of whether that property is stolen and retained or stolen then received by another. Stevens thus fails to persuade us that there is any meaningful distinction between the knowledge or belief that received property is stolen and the knowledge or belief that retained property is stolen for purposes of application of this presumption.

¶ 14 Even if we were to agree with Stevens's interpretation of the statute, however, he has failed to establish that application of this statutory presumption caused him any harm. Stevens does not make it clear whether he is challenging the trial court's reliance on the presumption in denying his motion to dismiss, the State's reliance on this presumption in presenting its case to the jury, or both. With regard to the trial court's decision, we have already concluded that there was sufficient evidence from which the jury could find that the elements of theft by receiving a stolen operable motor vehicle had been proven beyond a reasonable doubt, even had Stevens not been in possession of other stolen items. *See supra* ¶ 11. Further, Stevens has failed to show that this issue was preserved because he has not directed us to any place in the record where he raised this argument to the trial court when it considered and decided his motion to dismiss. *See generally 438 Main St. v. Easy Heat, Inc.,* 2004 UT 72, ¶ 51, 99 P.3d 801 ("[I]n order to preserve an issue for appeal[,] the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue[, so as to put the trial court] on notice of the asserted error and allow[ ] for correction at that time. . . . For a trial court to be afforded an opportunity to correct the error . . . the issue must be [timely and] . . . specifically raised . . . [and] the challenging party must introduce supporting evidence or relevant legal authority." (first and second alterations in original) (citations and internal quotation marks omitted)). As to the State's reliance on the presumption, we can find nothing in the record indicating that the prosecution employed the presumption in presenting its case. Specifically, nowhere in the closing arguments is this statutory presumption mentioned, nor was the jury instructed on it. We therefore do not see how the jury could have relied on this presumption as a basis for finding Stevens guilty.

¶ 15 Accordingly, we affirm.

¶ 16 WE CONCUR: JAMES Z. DAVIS, Presiding Judge, and CAROLYN B. McHUGH, Associate Presiding Judge.

---

**3.** A person could also receive the property from another and afterwards come to know or believe that it was stolen, thereby retaining stolen property. There are undoubtedly other methods of coming to possess stolen property that would fit the requirements of the statute.