2021 UT App 27

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JERRY DUNCAN NILSSON JR.,
Appellant.

Opinion
No. 20181046-CA
Filed March 11, 2021

Fourth District Court, American Fork Department
The Honorable Roger W. Griffin
No. 171100694

Aaron P. Dodd and Kara H. North, Attorneys
for Appellant

Sean D. Reyes and Jonathan S. Bauer, Attorneys
for Appellee

SENIOR JUDGE KATE APPLEBY authored this Opinion, in which
JUDGES GREGORY K. ORME and DIANA HAGEN concurred.[1]

APPLEBY, Senior Judge:

¶1     Jerry Duncan Nilsson Jr. appeals from his conviction of witness retaliation. He argues that because the evidence was insufficient to support the charged crime, the district court erred by submitting the case to the jury and his trial counsel was ineffective in not moving for a directed verdict. We see no error nor ineffective assistance and affirm.

---

1. Senior Judge Kate Appleby sat by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

BACKGROUND

¶2    Nilsson and the victim (Victim) lived together in a romantic relationship for several years before they broke up in 2015. After the relationship ended, Victim filed multiple police reports alleging that Nilsson was stalking her,[2] and the State consequently charged Nilsson with criminal stalking in 2016. Shortly thereafter, Victim obtained a permanent civil stalking injunction, which included a no-contact order.

¶3    One day in April 2017, Victim went to court to testify against Nilsson on the criminal stalking charge. While she was waiting to testify, she saw that Nilsson had recently made a social media post, with the ability to view it restricted solely to her. Nilsson's lengthy post started by saying that he was "getting ready to go to court to listen to some delusional bullshit." Nilsson berated Victim, saying she was lying, calling her "a coward" and "ignorant," and stating that her head is "so fucked up." Nilsson continued:

> i was helping you but you would not listen well you can grandstand all you want for all your new friends and people that give you things feeling sorry for you the victim. but i will not back down to you! and you can just go sell your soul but it wont be at my expence this is just the beginning see there is no justice unless you wait till you cant make up any more bull shit then i drag you through a civil case and sue for defimation of

---

2. In recent years, Victim has changed gender labels and personal pronouns. In the interest of clarity, we use the pronouns Victim used at the time of the underlying criminal actions, intending no disrespect with this usage.

caričtor. wrongfull prosicution, pergery and filing false documents in a court of law . . . .

Following the advice of the prosecutor with whom she had been waiting, Victim filed a police report regarding Nilsson's post.

¶4     Based on the post, the State charged Nilsson with witness retaliation and stalking. Victim testified that the post made her feel "scared," both because of the disruption that baseless litigation would have on her schedule and because she would have to be around Nilsson again. She stated, "I felt scared. I felt like—I felt really intimidated. It was—it was kind of like, you know, with how scary he is, like I already felt like it was hard to testify, and then this, I was even more scared." Responding specifically about the "i will not back down to you!" language, Victim testified, "[T]hat's really scary for me considering the previous history of things that have happened." Victim further testified she was unaware of any grounds for Nilsson to sue her. Instead, she was certain Nilsson was threatening her and "trying to scare [her] to not testify." The jury convicted Nilsson on both charges, and he appeals the witness retaliation conviction.

ISSUES AND STANDARD OF REVIEW

¶5     Nilsson argues, for the first time on appeal, that the evidence was insufficient to support the witness retaliation charge. "A failure to preserve an issue in the trial court generally precludes a party from arguing that issue in an appellate court, absent a valid exception." *State v. Johnson*, 2017 UT 76, ¶ 18, 416 P.3d 443. Nilsson makes his argument under the exceptions of plain error and ineffective assistance of counsel—asserting that the district court plainly erred by submitting the witness retaliation count to the jury and that his trial counsel rendered ineffective assistance by failing to move for a directed verdict on that count. *See generally id.* ¶ 19 (recognizing these exceptions to the preservation rule). "Plain error is a question of law reviewed

for correctness." *State v. Smit*, 2004 UT App 222, ¶ 7, 95 P.3d 1203. Similarly, "[w]here, as here, a claim of ineffective assistance of counsel is raised for the first time on appeal without a prior evidentiary hearing, it presents a question of law." *State v. Bryant*, 965 P.2d 539, 542 (Utah Ct. App. 1998).

## ANALYSIS

¶6     Nilsson first argues that the district court plainly erred by submitting the witness retaliation charge to the jury because the evidence was insufficient to support each element of the charge. "[T]o establish plain error, a defendant must demonstrate first that the evidence was insufficient to support a conviction of the crime charged and second that the insufficiency was so obvious and fundamental that the trial court erred in submitting the case to the jury." *State v. Holgate*, 2000 UT 74, ¶ 17, 10 P.3d 346.

¶7     Relatedly, Nilsson next argues that because the evidence was insufficient to support each element of the charge, his trial counsel provided ineffective assistance in not moving for a directed verdict on that basis. "In order to bring a successful ineffective assistance of counsel claim, appellant must show that his trial counsel's performance was deficient, in that it fell below an objective standard of reasonableness, and that the deficient performance prejudiced the outcome of the trial." *State v. Bryant*, 965 P.2d 539, 542 (Utah Ct. App. 1998) (quotation simplified).

¶8     Each of Nilsson's arguments is based on his assertion that his social media post did not meet the elements of the charged crime.[3] Under the witness retaliation statute,

---

3. Nilsson also argues that the more appropriate charge for the facts of the case would have been electronic communication harassment, *see* Utah Code Ann. § 76-9-201 (LexisNexis Supp.
(continued…)

A person is guilty of the third degree felony of retaliation against a witness, victim, or informant if, believing that an official proceeding or investigation is pending, is about to be instituted, or has been concluded, he:

(a)(i) makes a threat of harm; or

(ii) causes harm; and

(b) directs the threat or action:

(i) against a witness or an informant regarding an official proceeding, a victim of any crime, or any person closely associated with a witness, victim, or informant; and

(ii) as retaliation or retribution against the witness, victim, or informant.

Utah Code Ann. § 76-8-508.3(2) (LexisNexis 2017). Nilsson specifically takes issue with the element listed in subsection (a), making a threat of harm or causing harm.

¶9     Nilsson argues the social media post cannot be considered a threat of harm because it merely stated "his intent to seek legal redress," which redress is permitted under the witness retaliation statute. Nilsson is correct that the witness retaliation statute "does not prohibit any person from seeking any legal redress to which the person is otherwise entitled." *Id.* § 76-8-508.3(3). Thus, pursuing appropriate legal action would not qualify as harm under the statute. Yet the activity at issue here is

---

(…continued)
2020). But "the decision whether or not to prosecute, and what charge to file, generally rests entirely in the prosecutor's discretion, so long as it is not based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *State v. Lopez,* 2020 UT App 101, ¶ 22, 468 P.3d 604 (quotation simplified).

not Nilsson actually seeking appropriate legal redress, but his threat to bring a litany of claims against Victim. And the statute makes no exception for such a communication. Therefore, the post should be treated as any other communication under the statute: prohibited if it constitutes a harm or threat of harm to the witness.

¶10    The witness retaliation statute defines harm as "physical, emotional, or economic injury or damage to a person or to his property, reputation, or business interests." *Id.* § 76-8-508.3(1)(b). Therefore, a communication toward a witness that results in emotional injury would meet the harm element of the witness retaliation statute. Granted, it may be that simply notifying a witness of one's intent to seek appropriate legal recourse would not meet the harm element of the statute. But when that notification takes the form of an angry, ranting, expletive-laden threat to "drag [the witness] through" a barrage of dubious legal claims, that action may rise to a harm in and of itself; this is especially so when the communication is made just before the witness is scheduled to testify and there is a protective order in place prohibiting any contact with the witness. Simply put, context matters. *See State v. Spainhower*, 1999 UT App 280, ¶ 6, 988 P.2d 452 (addressing a previous version of the witness retaliation statute and stating that "it is appropriate for the jury to consider both the content of the statement and the context in which it was spoken"). Thus, we are satisfied that the menacing communication at issue here was sufficient to support a jury's finding of harm under the statute.

¶11    Nilsson argues that a claim of emotional harm "must have at least some manifestation of mental or physical symptoms" that accompanies a witness's fear. As support, Nilsson cites precedent regarding what is required to demonstrate "severe emotional harm" under the torts addressing the infliction of emotional distress. *See Mower v. Baird*, 2018 UT 29, ¶¶ 83, 86, 422 P.3d 837. His logic is that if *severe* emotional harm requires a

showing of *severe* mental or physical symptoms, then emotional harm should require at least some showing of mental or physical symptoms. But Nilsson cites no case law supporting such an extrapolation of the law on torts, and more importantly, the statute at issue here includes its own unambiguous definition of harm, rendering it unnecessary for us to look to other sources for guidance on this definition. *See State v. Candelario*, 909 P.2d 277, 278 (Utah Ct. App. 1995) ("When interpreting statutory language, we look first to the plain meaning of the statute. We only resort to other methods if the language is ambiguous." (quotation simplified)); *cf. Baird v. Baird*, 2014 UT 8, ¶ 38, 322 P.3d 728 (refusing to extend the tort definition of emotional distress to the criminal stalking statute, stating that to do otherwise would "effectively be amending the statutory standard" and that "clear and unambiguous statutory language preempts supplementation by the common law"). Instead, we simply apply the definition contained in the statute itself, which does not suggest that a physical manifestation is required for an action to qualify as emotional injury. *See* Utah Code Ann. § 76-8-508.3(1)(b) (defining harm as "physical, emotional, or economic injury or damage to a person or to his property, reputation, or business interests").

¶12   In addition to deciding there was sufficient evidence from which a jury could have determined that the social media post constituted a harm itself, we also note there was sufficient evidence from which the jury could have found that the communication constituted a threat of harm. The anger-infused social media post included language that "this is just the beginning," that Nilsson "will not back down," and that he planned to "drag [Victim] through" a civil case, and the post was timed to reach Victim just before she was scheduled to testify against him, *see Spainhower*, 1999 UT App 280, ¶ 7 ("[T]he jury's determination whether appellant's statement was threatening depends as much on the inferences to be drawn from the context in which the words were spoken as on the words themselves.").

The jury could have concluded from this that Nilsson wanted to retaliate against Victim and was threatening to do it in a way that would cause her future emotional or economic harm or would damage her reputation. And any such conclusion also would have supported a finding of harm under the witness retaliation statute.[4] *See* Utah Code Ann. § 76-8-508.3(1)(b).

¶13    Because we have determined that there was sufficient evidence to support the harm element of witness retaliation, it was not error for the district court to submit the case to the jury. *See State v. Salgado*, 2018 UT App 139, ¶ 37, 427 P.3d 1228 ("If there is any evidence, however slight or circumstantial, which tends to show guilt of the crime charged, the court must submit the case to the jury." (quotation simplified)). Furthermore, under these circumstances, a motion for a directed verdict would have been futile, and trial counsel's failure to make a futile motion is clearly not deficient performance. *State v. Johnson*, 2015 UT App 312, ¶ 16, 365 P.3d 730. Therefore, Nilsson's claim of ineffective assistance also fails.

---

4. Nilsson also argues that any economic injury was unsupported by the evidence because Victim's testimony did not include a statement that the threatened litigation would cost her money in attorney fees, nor was there testimony that lawsuits inevitably cost money. But such testimony would not be required here where the issue is not whether Victim would have incurred economic injury but, rather, whether Nilsson was threatening economic injury. And we think it would be a permissible inference here for the jury to conclude that Nilsson was threatening to file a long list of claims for the purpose of causing Victim economic and emotional injury, regardless of whether he would have been successful in causing such injury.

CONCLUSION

¶14 Because there was sufficient evidence to support the harm element of the charged offense, it was not plain error for the district court to submit the case to the jury and trial counsel was not ineffective in failing to move for a directed verdict. We affirm.

_____