2016 UT App 47

# THE UTAH COURT OF APPEALS

NATALIE NEWELL MEYER,
Appellant,
*v.*
WINTON CLARK APOSHIAN,
Appellee.

Opinion
No. 20140166-CA
Filed March 10, 2016

Third District Court, Salt Lake Department
The Honorable Andrew H. Stone
No. 134902809

Mitchell J. Olsen and Beau J. Olsen, Attorneys
for Appellant

J. Morgan Philpot, Attorney for Appellee

JUDGE J. FREDERIC VOROS JR. authored this Opinion, in which
JUDGE MICHELE M. CHRISTIANSEN and SENIOR JUDGE JAMES Z.
DAVIS concurred.[1]

VOROS, Judge:

¶1      Natalie Meyer appeals the district court's denial of her
petition for a domestic protective order against her ex-husband,
Winton Clark Aposhian.[2] The district court ruled that Meyer

---

1. Senior Judge James Z. Davis began his work on this case as a
member of the Utah Court of Appeals. He retired from the court,
but thereafter became a Senior Judge. He completed his work on
the case sitting by special assignment as authorized by law. *See
generally* Utah R. Jud. Admin. 11-201(6).

2. Appellee Aposhian did not file a brief on appeal.

failed to show that she is a victim of abuse or domestic violence, as required for a protective order under the Cohabitant Abuse Act (the Act). *See* Utah Code Ann. § 78B-7-103(1) (LexisNexis 2012). We affirm.

BACKGROUND

¶2    Meyer sought a protective order in May 2013, citing a number of encounters with Aposhian beginning in 2008. Both Meyer and Aposhian testified at the protective order hearing; she described a series of threatening actions, he a series of innocuous encounters. For example, Meyer, a high school teacher and tennis coach, testified that Aposhian would come to the tennis courts when she was coaching. She told her principal that she was going through a contentious divorce. The principal arranged for the school resource officer to "keep the peace" at the tennis courts. Aposhian testified that he would pick up their daughter from her school and, at the daughter's request, walk with her to the tennis courts.

¶3    The encounters culminated in May 2013, when Aposhian drove his large, military-style truck through the neighborhood, sounded its horn, and backed it onto Meyer's driveway. Aposhian testified that he was celebrating a holiday weekend, that he still had friends living in the neighborhood who enjoyed seeing his truck, and that Meyer's driveway was the only location to turn the truck around. He also testified that he carefully backed into the driveway, assisted by two neighbors.

¶4    Meyer testified that she was in her home with their daughter when she "heard the sound of an army truck and . . . a blaring horn." She watched through the window as Aposhian talked with neighbors and then backed the truck into her driveway to leave the cul-de-sac. She testified that she thought Aposhian was going to hit her car, that their daughter was

"upset," and that her "heart [was] racing." She also testified that the two did not communicate during the incident.

¶5      Meyer's current husband testified that he came home after Aposhian had driven away and found Meyer and her daughter "shaken and scared." Mr. Meyer testified that he called Aposhian and asked him not to back his truck into the Meyers' driveway again. Mr. Meyer testified that after the call ended, Aposhian called him back and said that he would come to the house and "bury you, I'll end you," to which Mr. Meyer responded, "Bring it, bitch." Mr. Meyer testified that he reported Aposhian's threats to the police.

¶6      Aposhian testified that he returned to the Meyers' house in a different truck to see if the military-style truck had damaged the driveway. Two police officers were there when he arrived and both testified that Aposhian was "agitated." They testified that when they asked him to get out of his truck, Aposhian informed them that he was armed; they initially allowed him to keep his gun, but eventually disarmed him and arrested him for trespassing.

¶7      After the truck incident, Meyer petitioned the court for a protective order, and Mr. Meyer petitioned the court for a civil stalking injunction. A different district court judge heard and granted Mr. Meyer's petition for a civil stalking injunction.

¶8      The district court denied Meyer's petition. The court stated that the "remedy of a Domestic Protective Order is deliberately narrow. It requires that a cohabitant seeking such an order 'has been subjected to abuse or domestic violence' or that there is a 'substantial likelihood of abuse or domestic violence.'" (Quoting Utah Code Ann. § 78B-7-103 (LexisNexis 2012).) The court specifically considered abuse and two implicated categories of domestic violence—criminal trespass and stalking. The court found that Meyer was not the victim of abuse or

domestic violence and that Aposhian posed no imminent threat of abuse or domestic violence to Meyer. Meyer timely appeals.

ISSUES AND STANDARDS OF REVIEW

¶9    Meyer first contends that the district court erred in finding no reasonable basis for her to fear as a result of Aposhian's actions. She next contends that the district court erred by "not tak[ing] into account [her] fear for her husband." She also contends that the district court "applied the wrong standard in determining emotional distress." Finally, she contends that she is entitled to attorney fees incurred during both the district court proceedings and this appeal.

¶10    "When reviewing challenges to a district court's decision regarding a protective order under the Cohabitant Abuse Act, the 'appellate court is entrusted with ensuring legal accuracy and uniformity and should defer to the trial court on factual matters.'" *Richardson v. Rupper*, 2014 UT App 11, ¶ 7, 318 P.3d 1218 (quoting *Bailey v. Bayles*, 2002 UT 58, ¶ 19, 52 P.3d 1158). We "review the trial court's findings of fact for clear error, reversing only where [a] finding is against the clear weight of the evidence, or if we otherwise reach a firm conviction that a mistake has been made." *Zappe v. Bullock*, 2014 UT App 250, ¶ 4, 338 P.3d 242 (alteration in original) (citation and internal quotation marks omitted).

ANALYSIS

¶11    To obtain a protective order under the Cohabitant Abuse Act, "a petitioner must prove that he or she is (1) a 'cohabitant' (2) 'who has been subjected to abuse or domestic violence, *or* to whom there is a substantial likelihood of abuse or domestic violence.'" *Patole v. Marksberry*, 2014 UT App 131, ¶ 12, 329 P.3d 53 (quoting Utah Code Ann. § 78B-7-103 (LexisNexis Supp.

2015)). The Act incorporates the definition of "domestic violence" from section 77-36-1. *See* Utah Code Ann. § 78B-7-102(5) (LexisNexis Supp. 2015). That definition of "domestic violence" includes "commission or attempt to commit, . . . by one cohabitant against another . . . stalking." *Id.* § 77-36-1(4)(i). Stalking, in turn, is defined in section 76-5-106.5:

> A person is guilty of stalking who intentionally or knowingly engages in a course of conduct directed at a specific person and knows or should know that the course of conduct would cause a reasonable person: (a) to fear for the person's own safety or the safety of a third person; or (b) to suffer other emotional distress.

*Id.* § 76-5-106.5(2) (LexisNexis 2012). Emotional distress "means significant mental or psychological suffering, whether or not medical or other professional treatment or counseling is required." *Id.* § 76-5-106.5(1)(d).

¶12 The district court applied these definitions in ruling that "Ms. Meyer has not been the victim of abuse or domestic violence by Mr. Aposhian, and there is no imminent threat of abuse or domestic violence by him." Meyer challenges these rulings on appeal, arguing in effect that the court erred in finding that Aposhian's "explanation of the events was credible."

¶13 "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Utah R. Civ. P. 52(a). "Credibility determinations are within the province of the [district court] judge, who is uniquely equipped to make factual findings based exclusively on oral testimony due to his or her opportunity to view the witnesses firsthand, to assess their demeanor, and to consider their testimonies in the context of the

proceedings as a whole." *Kidd v. Kidd*, 2014 UT App 26, ¶ 34, 321 P.3d 200 (citation and internal quotation marks omitted). Furthermore, "judges, by virtue of the duties of their office, are regularly exposed to evidence of incidents of domestic violence and the persons involved in such incidents." *M.K. v. Doyle*, 2014 UT App 160, ¶ 8, 330 P.3d 1278. A court does not "view the incidents in isolation when determining whether a reasonable person in [the petitioner's] position would fear for her safety. Rather, [it] evaluate[s] whether the course of conduct considered in the context of the circumstances would cause a reasonable person to fear for her safety." *Butters v. Herbert*, 2012 UT App 329, ¶ 18, 291 P.3d 826 (citations and internal quotation marks omitted).

¶14 Meyer claims that in finding Aposhian's testimony credible, the district court "misconstrue[d] the significance of [his] acts and fail[ed] to acknowledge that [his] actions go over and above the circumstances divorcing parties tend to engage in." She also claims that the court incorrectly concluded "that there was no indication that physical violence would occur." She argues that under the stalking statute, "the petitioner needs to only fear."

¶15 At the protective order hearing, the district court "heard testimony concerning a number of events that [Meyer] claim[ed] justify a conclusion that she is in imminent threat of physical violence from [Aposhian]." After considering the testimony of both parties, the court "found Mr. Aposhian's version of these events credible" and "did not find credible Ms. Meyer's claims that Mr. Aposhian's presence . . . would cause a reasonable person to suffer significant emotional distress."

¶16 The court also found that "[d]espite a lengthy and contentious divorce, Ms. Meyer is unable to testify to any single instance where Mr. Aposhian committed any physical violence or overtly threatened physical violence to her." The court found

that Meyer "has found her interactions with Mr. Aposhian since her separation upsetting, intimidating, and annoying," but determined that such feelings "do[] not lead to a conclusion that they will escalate to violence." The court finally found that, although "[c]ontentious divorces, by nature, cause emotional distress," "Meyer's claims that Mr. Aposhian's [behavior] would cause a reasonable person to suffer significant emotional distress" were not credible. These credibility determinations are not against the clear weight of the evidence, nor do we have a definite and firm conviction that a mistake has been made. On the contrary, because the district court judge was "uniquely equipped" to make credibility determinations, *see Kidd*, 2014 UT App 26, ¶ 34, we defer to the credibility findings of the district court—specifically that Aposhian's testimony was credible and that a reasonable person would not fear Aposhian's actions as he described them.

¶17    Meyer next contends that the district court "completely dismissed the fear that [Meyer] had for her husband and did not take it into account when denying the protective order."

¶18    A person may be guilty of the predicate crime of stalking if that person knowingly or intentionally engages in a course of conduct "directed at a specific person and knows or should know that the course of conduct would cause a reasonable person . . . to fear for the person's own safety *or the safety of a third person*." Utah Code Ann. § 76-5-106.5(2) (LexisNexis 2012) (emphasis added). Meyer is thus correct as a matter of law that a domestic protective order may be based on the petitioner's fear for the safety of a third person.

¶19    But this case presents an atypical twist: the third person for whose safety Meyer feared had already obtained a civil stalking injunction against Aposhian. The court here did not "dismiss[] the fear" Meyer had for her husband; it simply included Mr. Meyer's civil stalking injunction in the reasonable-

person calculus. And it in effect concluded that, looking at both the stalking injunction and the other facts of this case—bearing in mind the court accepted Aposhian's version of events—a reasonable person in Meyer's position would not fear for Mr. Meyer's safety. In so doing, the district court acted reasonably and in keeping with the statute.

¶20   Next, Meyer contends that the district court "applied the wrong standard in determining emotional distress." Meyer argues that the court misinterpreted and misapplied two standards in the stalking statute: the reasonable person standard and the emotional distress standard.

¶21   Meyer first argues that the district court misapplied the reasonable person standard. It erred, she maintains, in finding "that a reasonable person would not have experienced emotional distress [or fear] as a result of [Aposhian's] actions." She argues that the "appropriate standard under Utah law is if a reasonable person, under the same situation and circumstances as [Meyer], would have suffered emotional distress from [Aposhian's] conduct." "The proper interpretation and application of a statute is a question of law which we review for correctness, affording no deference to the district court's legal conclusion[s]." *Ellison v. Stam*, 2006 UT App 150, ¶ 16, 136 P.3d 1242 (alteration in original) (citation and internal quotation marks omitted).

¶22   The "offense of stalking does not focus on the particular emotional distress [a particular victim] suffers, but rather on how the defendant's conduct would affect a reasonable person." *Baird v. Baird*, 2014 UT 08, ¶ 24, 322 P.3d 728 (alteration in original) (citation and internal quotation marks omitted). The statute defines a "reasonable person" as "a reasonable person in the victim's circumstances." Utah Code Ann. § 76-5-106.5(1)(e). "By including 'in the victim's circumstances' as part of the 'reasonable person' definition, [section 76-5-106.5] provides for an individualized objective standard. Under this standard, a

court must consider the entire context surrounding defendant's conduct." *Baird*, 2014 UT 08, ¶ 26 (citation omitted). However, "courts must avoid succumbing to a purely subjective analysis, which is inconsistent with the objective standard's intent to protect[] against criminalizing conduct that only an unreasonably sensitive or paranoid victim would find harassing so as to reduce the risk of a truly innocent defendant falling within the ambit of [a stalking statute]." *Id.* ¶ 27 (alterations in original) (citation and internal quotation marks omitted).

¶23 Meyer argues that "[t]here is nothing in the record that establishes that the trial court looked at the totality of the circumstances from a reasonable person in [Meyer's] position and how [Aposhian's] actions would have affected a reasonable person in [Meyer's] circumstances." We disagree.

¶24 The district court, after summarizing all the incidents in question, stated that it did "not view these incidents in isolation, but consider[ed] all of the incidents, taken as a whole, as to whether they amount to a course of conduct directed at Ms. Meyer that would cause a reasonable person to suffer significant emotional distress." It concluded that such incidents "may be annoying, painful, or intimidating, but to make the leap from there to 'significant emotional distress' under the stalking statutes would transform every unpleasant divorce into a potential stalking action." The district court therefore correctly applied the "reasonable person" standard in this case.

¶25 Meyer next argues that the district court misapplied the emotional distress standard. She maintains that the court incorrectly concluded that "the behavior of [Aposhian] had to involve behavior so outrageous as to reasonably result in significant emotional distress." Meyer argues that "[t]his determination is inappropriate because 'outrageous behavior' should not be read into the statute."

¶26 This argument was not preserved. "The purpose of the preservation requirement is to put the district court on notice of an issue and provide it with an opportunity to rule on it." *Donjuan v. McDermott*, 2011 UT 72, ¶ 20, 266 P.3d 839. "To properly preserve an issue for appellate review, the issue must be raised in the district court. Additionally, the issue must be specifically raised, in a timely manner, and must be supported by evidence and relevant legal authority." *Id.*; *see also State v. McNeil*, 2016 UT 3, ¶ 24.

¶27 Meyer has not identified a point in the record where she presented this argument to the district court. *See* Utah R. App. P. 24(a)(5) (requiring an appellant's brief to provide either a "citation to the record showing that the issue was preserved in the trial court" or a "statement of grounds for seeking review of an issue not preserved"). Nor has our review of the record revealed any such presentation. *See Wohnoutka v. Kelley*, 2014 UT App 154, ¶ 6, 330 P.3d 762 ("An appellate court should not be asked to scour the record to save an appeal by remedying the deficiencies of an appellant's brief. We have nonetheless reviewed the record designated on appeal . . . .").

¶28 Because Meyer did not raise this issue in the district court, she did not preserve it. Because she did not preserve it, we decline to consider it. *See Hale v. Big H Constr., Inc.*, 2012 UT App 283, ¶ 55, 288 P.3d 1046. However, we note that the supreme court addressed the stalking statute's emotional distress standard in *Baird v. Baird*, 2014 UT 08, 322 P.3d 728, a case decided after the district court entered the order at issue here. The supreme court held that, as amended in 2008, "[t]he statute leaves no room for a requirement of proof of outrageous and intolerable conduct." *Id.* ¶ 38 (internal quotation marks omitted).

¶29 The district court recognized that, at the time of the hearing, the emotional distress "standard . . . is a bit up in the air" and informed the parties that the standard "was interpreted

to equate to the tort standard at one point, then the standard for the statute was amended." The court further explained, "There's a dispute among folks about whether it . . . was intended to amend the appellate court interpretation or not. I tend to be on the spectrum of it needs to be significant emotional distress, i.e., something like the requirement for tortious infliction of emotional distress." The court then invited the parties "to brief it." Despite this information and invitation, Meyer did not brief the emotional distress standard for the district court, and therefore did not preserve her argument for appeal.[3]

¶30 Finally, Meyer contends that we should award her attorney fees resulting from this appeal. "A party seeking to recover attorney's fees incurred on appeal shall state the request explicitly and set forth the legal basis for such an award." Utah R. App. P. 24(a)(9). Further, "only the prevailing or successful party is entitled to an award of attorney fees." *Olsen v. Lund*, 2010 UT App 353, ¶ 6, 246 P.3d 521. Meyer does not cite any legal basis for an award of attorney fees and has not prevailed on appeal. We therefore deny her request for fees.

¶31 The judgment of the district court is affirmed.

————————

3. Even if Meyer had preserved this argument in the district court, it would not have changed the outcome on appeal. The district court found that the behaviors at issue in this case were common in "contentious divorces." Given the court's findings, we agree that "to make the leap from there to 'significant emotional distress' under the stalking statutes would transform every unpleasant divorce into a potential stalking action.'"