**2025 UT App 153**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
DEVIN STIRLING BARNEY,
Appellant.

Opinion
No. 20240178-CA
Filed October 23, 2025

Fifth District Court, Cedar City Department
The Honorable Matthew L. Bell
No. 231500205

Dylan T. Carlson, Debra M. Nelson, Benjamin Miller,
and Wendy M. Brown, Attorneys for Appellant

Chad E. Dotson and Sam E. Woodall,
Attorneys for Appellee

JUDGE AMY J. OLIVER authored this Opinion, in which JUDGES
DAVID N. MORTENSEN and JOHN D. LUTHY concurred.

OLIVER, Judge:

¶1      Samantha[1] told Devin Sterling Barney she did not have any romantic interest in him and to leave her alone, but he continued to pursue her by repeatedly delivering flowers, confronting her, and giving her a letter describing his feelings for her. Barney was charged with criminal stalking, and the district court found him guilty after a bench trial. Barney asserts the district court erred in denying his motion to dismiss. We affirm.

---

1. A pseudonym.

BACKGROUND[2]

*The Stalking*

¶2 Samantha is a yoga instructor and massage therapist. Shortly after she started teaching yoga at a local gym, Barney began attending her classes. Interactions between the two were initially friendly and took place "at the gym." Although Barney expressed romantic interest in Samantha, Samantha told Barney she was "not interested" in him. Incorrectly believing she was playing "hard to get," Barney continued to flirt with her. He began leaving flowers at her massage therapy office, doing so at least three times. Samantha told Barney, "[D]on't talk to me, don't communicate with me, don't leave me flowers, leave me alone."

¶3 On one subsequent occasion, Barney went to Samantha's massage therapy office and confronted her about the perceived "mixed signals" he received from her. The situation escalated, with Barney "aggressively approaching" and yelling at her. She retreated into her office, locked the door, and called the police. By the time police responded to the scene, Barney had left. Eventually, Samantha had Barney removed from her yoga classes.

¶4 Approximately eight months later, Barney approached Samantha, asking if he could rejoin her yoga classes. He told her that "he had been working on himself" and "was trying to be better." She agreed he could resume attending because self-improvement was "what all of [her] work [was] about." However, once Barney returned, "it was immediately not good." Shortly after rejoining the class, Barney accused Samantha of having an affair with another class attendee (Husband). He told Husband's wife (Wife) of his suspicions, and Wife confronted Samantha. A

---

2. "On appeal from a bench trial, we view and recite the evidence in the light most favorable to the district court's findings; we present additional evidence only as necessary to understand the issues on appeal." *Bountiful City v. Sisch*, 2023 UT App 141, n.1, 540 P.3d 1164 (cleaned up).

few days later, Wife reached out to Samantha to apologize for the misunderstanding and invited Samantha on a trip with her, Husband, and Barney so they could "heal together." Wife indicated that Barney would pay for this trip and it would "make [his] dreams come true." This offer made Samantha "[v]ery, very uncomfortable," and she feared it could be a set up for "murder or some kind of sexual encounter."

¶5     A few days later, Barney dropped off a three-page letter for Samantha wherein he again expressed his feelings for her. The letter began, "I know you don't want to hear from me," and it then continued by saying how Barney was trying to be different so she "could learn to love the real [him]." He again insisted she was attracted to him and was just "confused" because he was "not like the other men [she] dated." Toward the end of the letter, Barney indicated he would be moving to the Philippines to be with another woman.

¶6     Samantha called the police about two weeks later, after her family encouraged her to get a restraining order. An officer (Officer) responded and observed that Samantha seemed "worried and concerned." Officer then spoke to Barney, telling him how Samantha felt about his continued advances. Barney was later charged with one count of stalking.

*The Trial*

¶7     Barney's case proceeded to a bench trial. The State called Samantha and Officer as witnesses, and they testified to the events described above. The State also introduced into evidence pictures of the various flowers Barney left at Samantha's office and the three-page letter.

¶8     Following the presentation of the State's evidence, Barney made a motion for a directed verdict (the Motion). Barney conceded the elements necessary to prove a course of conduct required for stalking were met. *See* Utah Code § 76-5-106.5(2) (requiring that an actor intentionally or knowingly engaged in a

course of conduct directed at a specific individual to be guilty of stalking). However, Barney claimed there was not sufficient evidence to prove the second prong of the statute, which required a showing that he knew or should have known this course of conduct would cause a reasonable person to fear for their safety. *See id.* The court denied the Motion.

¶9 Barney then testified in his own defense. Barney's testimony largely corroborated the events laid out in Samantha's testimony, including that she told him she was not interested in a romantic relationship. Barney testified she sent him "mixed signals" and was "playing hard to get," so he continued flirting with her. He insisted he could "read people pretty well," and Samantha's body language, "continuous eye contact," and "bubbly personality" indicated she was interested in him romantically. He testified as to his reasoning for continuing to pursue her after she rejected him: "[M]en get the idea that even when a woman says no that you have to keep pursuing because no doesn't always mean no. No sometimes means yes."

¶10 At the conclusion of evidence, the district court found Samantha credible and Barney "not so much." The district court then found Barney guilty of stalking, sentenced him to probation, and entered a continuous protective order.

ISSUE AND STANDARD OF REVIEW

¶11 Barney alleges the district court erred in denying the Motion.[3] A motion for directed verdict applies only in cases before a jury. "[B]ecause this was a bench trial[,] we construe his motion as a motion to dismiss." *State v. Bingham*, 2015 UT App 103, ¶ 24, 348 P.3d 730. A district court's "grant or denial of a motion to

---

3. Within his brief, Barney advances a more general sufficiency of the evidence argument. However, this was not identified as an issue for review before this court. Therefore, we address only the issue presented: the denial of the Motion.

dismiss is a question of law, and we review the district court's ruling for correctness, giving no deference to the decision of the district court." *Id.* ¶ 25 (cleaned up).

ANALYSIS

I. Motion to Dismiss

¶12   Barney contends it was error for the court to deny the Motion because the State's evidence was insufficient to prove he knew or should have known that his behavior would cause a reasonable person to suffer emotional distress or to fear for their safety.[4] "Evidence is sufficient, and the denial of a motion to dismiss proper, if the evidence and all inferences that can be reasonably drawn from it establish that some evidence exists from which a reasonable [fact finder] could find that the elements of the crime had been proven beyond a reasonable doubt." *State v. Spainhower*, 1999 UT App 280, ¶ 5, 988 P.2d 452 (cleaned up).

¶13   A person is guilty of criminal stalking when the person engages in a course of conduct and the person "knows or is reckless as to whether the course of conduct would cause a reasonable person to fear for the individual's own safety . . . or to suffer other emotional distress." Utah Code § 76-5-106.5(2)(a). "Reasonable person" in this section refers to "a reasonable person in the victim's circumstances." *Id.* § 76-5-106.5(1)(a)(v). As explained below, the State presented some evidence that Barney knew or should have known that his actions would cause a reasonable person in Samantha's position to suffer emotional distress or fear for their safety.

---

4. Because Barney conceded at trial that his actions amounted to a course of conduct, the only issue on appeal is whether he knew or should have known such actions would cause a reasonable person in Samantha's circumstances to suffer emotional distress or fear for their safety.

A.    Emotional Distress or Fear for Safety

¶14    The statute defines emotional distress as "significant mental or psychological suffering, whether or not medical or other professional treatment or counseling is required." Utah Code § 76-5-106.5(1)(a)(ii)(A). Emotional distress is established through an objective, not subjective, standard. *See Baird v. Baird*, 2014 UT 08, ¶ 24, 322 P.3d 728 ("Utah's stalking statute conforms to the Model Stalking Code's solely objective standard." (cleaned up)). "By including 'in the victim's circumstances' as part of the 'reasonable person' definition, the stalking statute provides for an individualized objective standard." *Id.* ¶ 26 (cleaned up). Such a standard requires us to "consider the entire context surrounding [the] defendant's conduct." *Id.*

¶15    Barney argues that although his conduct may have been "inelegant" or even "inappropriate," he was simply "mistaken that [Samantha] might still be interested." Pointing to *Baird*, he asserts that none of the factors courts may consider in applying this objective standard "weigh in favor of a finding that . . . Barney's conduct would cause emotional distress to a reasonable person in [Samantha's] circumstances." But the supreme court in *Baird* did not create a specific test; it highlighted factors courts had considered in various cases. *See id.* ¶ 27 (stating that "Courts applying this individualized objective standard have considered such factors as the victim's background, the victim's knowledge of and relationship with the defendant, any history of abuse between the parties, the location of the alleged stalking and its proximity to the victim's children, if any, and the cumulative effect of [the] defendant's repetitive conduct." (footnotes omitted)). The court also indicated there could be "other relevant factors" to consider in a given case. *Id.* And here, not all of the factors identified in *Baird* are applicable or particularly enlightening. For instance, no children are involved and, as Barney admits, "the information presented at trial regarding [Samantha's] background was sparse." Accordingly, we consider in our analysis what is relevant here: the location of the alleged stalking behavior toward Samantha and the cumulative effect of

Barney's actions. In doing so, we are persuaded that some evidence supported the district court's finding that Barney was guilty of stalking beyond a reasonable doubt.

### 1. Location

¶16 The relevant incidents admitted at trial include (1) the leaving of flowers three times, (2) the confrontation between Barney and Samantha, and (3) the accusations of the affair/trip invitation.[5] Only one of these incidents (the accusations of the affair) took place at the gym where Samantha taught yoga. All of the others took place at Samantha's massage therapy office. Nothing in the record indicates Barney was ever a client of Samantha's massage therapy practice; their interactions were "generally at the gym" where Barney attended her yoga classes. Although not determinative, the fact that multiple incidents occurred in places other than the location of their typical interactions goes to the reasonableness of whether a person would fear for their safety. Barney's actions were outside the norm both in action and space for the relationship of a yoga student and teacher.[6]

### 2. Cumulative Effect

¶17 Importantly, Barney continued his romantic overtures despite Samantha's words and actions. Samantha repeatedly communicated directly to Barney her lack of interest in him and

---

5. Neither Samantha nor Barney testified as to where he delivered the letter. Therefore, we do not consider the letter in our analysis of the location of Barney's conduct.

6. That Barney delivered flowers to Samantha—a seemingly innocuous act—does not immunize his conduct from criminal liability. As our supreme court has pointed out, "[w]hen considering the context surrounding the respondent's conduct, acts that seem perfectly innocent or even well intentioned may constitute stalking." *Baird v. Baird*, 2014 UT 08, ¶ 26, 322 P.3d 728.

her need for boundaries. We emphasize, however, "it is not a defense that the alleged stalker was not given actual notice that the course of conduct was unwanted" because doing so would place an undue burden on victims to "confront or try to reason with the stalker, which could be dangerous and may unnecessarily increase the victim's risk of harm." *Baird v. Baird*, 2014 UT 08, ¶ 31, 322 P.3d 728 (cleaned up). In this case, however, Samantha repeatedly and explicitly told Barney she was uncomfortable with his actions. But he nonetheless persisted, even when told by Samantha, "[D]on't talk to me, don't communicate with me, don't leave me flowers, leave me alone." A reasonable person would be disquieted by someone continuing a course of action that the person specifically said they were not comfortable with.

¶18   Furthermore, even after eight months had passed and Barney reassured Samantha he had changed, Barney continued his disquieting conduct, including the pursuit of a romantic relationship. When Barney approached Samantha wishing to resume attending her yoga classes, he said he "had been working on himself . . . and was trying to be better." Samantha felt self-improvement was "what all of [her] work [was] about," so she agreed Barney could resume attending her yoga classes. However, shortly thereafter, Barney accused Samantha of having an affair with Husband; told Wife (who told Samantha) that he would pay for him, Samantha, Husband, and Wife to go on a trip together; and left Samantha a three-page letter that again declared his romantic feelings for her. The repeated nature of Barney's disquieting actions and unwelcome pursuit of romantic interests over an extended period of time further supports that a reasonable person would suffer emotional distress or fear for their safety.

¶19   In sum, there existed some evidence to support the district court's determination that Barney's course of conduct would cause a reasonable person in Samantha's position emotional distress or to fear for their safety.

B.    The Defendant's Knowledge

¶20    Barney next contends there was insufficient evidence in the record to support a finding that he knew or should have known his actions would cause emotional distress. He claims the district court's statement—made after finding him guilty—that Barney's ability to read people is "quite poor" is at odds with him having subjective knowledge of the effect of his actions. But sufficient evidence showed he did have such knowledge. First, the opening line in the three-page letter he wrote to Samantha said, "I know you don't want to hear from me." Second, at the very least, the evidence showed that Barney should have known from Samantha's communications to him—"I'm not interested in [you]" and "[D]on't talk to me, don't communicate with me, don't leave me flowers, leave me alone"—that his continued unwanted actions would cause emotional distress or fear for safety. And even though Samantha did agree to permit Barney to resume attending her yoga classes—after an eight-month gap and with Barney's assurances he had changed—she never told him she had changed her position that she had no romantic interest in him. Therefore, he should have known that his continued romantic advances were not welcome, and he was at least reckless as to whether such advances would cause fear or emotional distress.

¶21    We thus conclude that some evidence supported the district court's ruling on Barney's knowledge of the impact of his conduct. Accordingly, the district court did not err in denying the Motion.

CONCLUSION

¶22    The State presented some evidence that supported the district court's finding beyond a reasonable doubt that Barney knew or should have known his actions would cause a reasonable person in Samantha's circumstances to suffer emotional distress or to fear for their safety. Therefore, the denial of his motion to dismiss was not in error, and we affirm Barney's conviction.

————